Good morning. My name is Laurie Tyker and I'm appearing on behalf of the appellant Calvin Jackson. I'll attempt to reserve five minutes for rebuttal. There are two issues that were certified before this by this court before you this morning and I'll address the first issue first. Mr. Jackson's due process right was violated when the trial court prohibited him from presenting his theory of defense at trial. Mr. Jackson was charged in this case with numerous offenses, burglary, kidnapping, sexual assault, robbery, all with a deadly weapon. The complaining witness was his on-again, off-again girlfriend of ten years, Ms. Heathman. It was a volatile relationship that's not disputed. Before trial, Ms. Heathman wrote a recanting letter that was presented to the trial court at calendar call. She had to be arrested on a material witness warrant to appear in court. She didn't want to come to court on this and as the state alleges on other cases as well. The defense, the state story in this was that she didn't want to come to court because she was scared of Mr. Jackson and repercussions if she were to testify against him. The defense story at trial was that the sexual assault was consensual and that she did this a lot. She filed charges and she wouldn't go to court. She used the police to control Mr. Jackson and that's what she wanted to do. Another theory of defense was that she was scared to be there because she was again in jail and she'd have to commit perjury to get out of jail. The state's theory was that Ms. Heathman was a battered woman, that this was a cycle of domestic violence. The state in closing said, stated everything boils down to consent in this case. The defense theory was that it was consensual. Every time there were problems, she was on the phone with police. She used the police to exercise control over him. Before the trial, the court held a bad act or what's the Nevada equivalent of a 404B hearing, a Petrocelli hearing, it's called in Nevada. The defense filed a timely objection to that and it's, the judge withheld the ruling at the end of that, at the end of that hearing. That's found in the record at 137-154. It's important to note a couple of things here because I think it's extraordinarily relevant in terms of what the defense was trying to do in terms of get these prior bad acts or false, well, not bad acts, but false allegations that she made against Mr. Jackson in at trial. There was a procedure directly related to how to do that, wasn't there, if he requested a Miller hearing? That's correct, Your Honor. And he didn't do that, did he? Well, my argument here is that it's a little confusing procedurally in terms of how this happened and I'd ask that you look at the motions because pursuant to Nevada law, a lot of the procedural things that are supposed to happen didn't and they didn't happen on the part of the state and they didn't happen on the part of the defense in terms of specifically labeling motions. So it all sort of washes out in the end, I mean, because it wasn't, I mean, there is a specific, under Nevada's procedure, if you want to bring in evidence of potential prior false allegations, is that correct? Yes. And it's set out and they call it a Miller hearing. Correct. And did the defense attorney request or file such a hearing, request or seek such a hearing? I believe that they did. I believe that the Miller proffer of the false allegations was included within the motion to dismiss that was filed based upon the recantation hearing. Again, the state never filed a Petrucelli hearing asking for this bad act evidence to be put on, but they had this hearing, even though there wasn't a motion before the court, the court held the Petrucelli hearing. At the time of that hearing, when they were talking about bad acts, the state, the defense presented a motion, which they, it was a motion in Lemonade that they titled a whole bunch of things. It was a motion to dismiss, wasn't it? To dismiss the charge, not, okay. A motion to dismiss, but then they also went through and listed all of the four police officer testimonies showing that in those four instances, which were also included within that Petrucelli bad act, that the police investigated and they found that there was no corroborating evidence and charges had not been filed. So your honor, my argument is that this was the Miller proffer of false allegations that was put before the court. And in terms of, in terms of what was included, all of those, those allegations were laid out. The police reports were laid out within that motion, as well as all of those witnesses were noticed in the defense notice of witnesses. So it's not like the state didn't know that these people were on their witness list. It's not like this hadn't been spoken about before. There's numerous occasions within the record where the evidence of those officers and those incidents were brought before the court and the defense asked to be able to put on the North Las Vegas officers to again, present his defense and present. You weren't the attorney. You weren't the defense attorney in the trial. No, I was not your honor. And, uh, was the, was the failure of the defense attorney to ask for a Miller hearing, was that a Strickland violation or was that a incompetent counselor? You don't, you don't raise that in your brief. I don't raise it in my, in my brief because it was an issue that was raised, uh, in, within the habeas proceedings and it was found to be defaulted. So it was default. As, as it was coined that way. However, I. It's a narrow question about collateral, uh, uh, uh, impeachment of a witness. And, uh, that's not a very technical question in Nevada. And there is, there is a Miller case that tells you how to do it and he didn't do it. So what, what. I would, I would respectfully disagree in that they did do it. They, they, um, put forth these four instances that they wanted to introduce the police officer's testimony about. They, they listed out what the testimony was going to be. Police officers are presumed to be reliable. They included the police reports. They included their names. And what happened was, I think it's also important to note that during the trial at the, at the end of the Petrucelli hearing, the bad, the 404B, you know, bad act hearing, what the state, what the trial court judge said was that she was going to withhold her ruling. She'd see what happened on cross when the defense crossed Ms. Heathman, and then she would go from there. What happened there is, I think is also important in terms of how this went down. What happened at cross was the trial court judge had specifically said before trial at the Petrucelli hearing, I'm withholding my ruling. Well, on cross. Withholding her, her ruling as to 404B or motion to dismiss? On 404B. Okay. And, and whether or not that, you know, that door would be opened. Um, what happened on redirect was that the state goes right into this bad act evidence. The bad act evidence included one of the instances where Ms. Heathman says that Mr. Jackson raped her on another occasion. On recross, Mr. Mr. Banks, the trial counsel goes into that. He goes into that to try to show and contradict her and ask her questions about that incident. The main reason for that being is that that's one of the instances, one of the more instances that the defense wanted to be able to go and go in front of the jury with the police officer and say, look, she's testified about this, um, this, this alleged rape that happened. You investigated this and you decided not to press charges. Isn't that correct? The trial court didn't allow her to do that. Said that it was collateral, said that it was presentation of extrinsic evidence, but where the trial court got it wrong was that again, you can't, you know, pursuant to, to chambers and, um, and Crane and Washington, the evidentiary rules here can't mechanicalistically be applied to testimony that's critical to his defense. And it bears the assurances of trustworthy, um, to defeat the ends of justice. You just can't do that. The fact that she had maybe reported conduct to the police, but they found that it wasn't corroborated. That doesn't mean it didn't happen. It just means that they didn't find enough to go forward. But is that relevant on this, on the charge in this case? It's absolutely relevant here, Your Honor, because the defense, again, what the state got was they got to, they got to eat, you know, present their cake. The jury got to eat the cake, but the defense never got to even talk about their cake. The defense theory here was consensual sex, was that they had sex. He admitted to the report and, and that came in at, at trial that Mr. Jackson admitted that he, um, had sex with Ms. Hiesman that day, but the defense was consent. And so by disallowing him to even go forward to be able to say, look, you know, these are false allegations that she's using the police to control them. He wasn't able to do anything in terms of trying to present his half of it. And certainly that's something that the jury should have been able to determine in terms of the credibility of it. A limiting instruction was given for the state when they went improperly, improperly went into this bad act evidence because they had not received a ruling from the judge, allowing them to do so. Limiting instruction was given there. If there's any question as to whether or not it would have been confusing, um, to the jury in terms of presenting that evidence, they could have been on there. Improperly, was there a ruling that that was improper? There was not a rule. What happened was she went, the state's, the state's attorney, the prosecutor  gave two incidences, maybe three. At that point, the trial judge, sua sponte, says, hold on. I'm going to give a limiting instruction here. And so there really had not been any kind of a ruling. Oh, but a trial judge can give that limiting instruction, even if they, when they approve it, or if something comes out that they hadn't approved, it's not a, it doesn't characterize it necessarily as improper. I mean, you give that limiting instruction, whether you've allowed it formally or not, and any time there's something like that, you give a limiting instruction. Absolutely. My point is that the State went into it without even receiving, because the trial judge had said at the end of the Petruccilli hearing, I withhold my ruling as to whether or not you can get into that. And my point is, though, whether the court had specifically allowed it previously, they would have still given that limiting instruction. True. Okay. If I could reserve the remainder of my time. Good morning. I'm Jamie Rush on behalf of the Nevada Attorney General's Office here for the appellees in the case. I want to throw a couple of points out there real quick. These were mentioned in the briefs, and I don't know that they need extended discussion. But one way you could address these claims is to say either that they were vaguely pled or that they failed to raise a federal issue. The district court adopted some of that, and that's really all I have to say on those topics. I do want to talk about the meat of the claims before us here today, and it might be useful just to review real quickly some of the history of how this came about since counsel spent some time talking about it. I'm looking at EOR 154, and this is when they had the pretrial hearing with the judge about what was going to come in or not come in in terms of these prior bad acts. The judge said, and I quote, a lot of this, however, I am not ruling on it right now, but I would assume a lot of this will not be relevant. We're not going to sit here and go back through the whole history between these two people. If you feel it's relevant regarding credibility or something, I'll allow you to go in to a certain extent, but you're not allowed to prove or disprove by bringing in collateral witnesses. Well, that's basically the approach that they took through trial. Just to be clear, it was not something the state brought up during their direct examination. On cross-examination, this is, I think, on EOR 333 through 337, the victim testified that the case had gone further than she had planned, and that's in response to the question on cross-examination. So then, somewhat predictably, on redirect, the state gets into, well, why did you say that? What makes it go further than you thought? And she explains, well, she feared for her life. She hadn't wanted to testify before. She didn't want to testify now. Now, I think that the issue before the court, obviously, there's a certain state law component to all of this, but when it comes to federal habeas, that really isn't all that helpful unless you're going to say that, well, it was a state law issue and it ended right there. If the question is, what does due process require in this case, I think we can solve that problem by talking about what it means when we talk about a theory of the defense and what it means when we talk about whether or not something's collateral. And counsel discussed some of the cases that are cited in the brief, and I think those are the appropriate authorities, Chambers versus Mississippi and Washington versus Texas. A defendant has a right to present his theory of the defense. I don't really dispute that. But what theory of the defense means, if you read those cases, and Chambers and Washington in particular, those were cases where there was an alternate suspect, where there actually was evidence that maybe the defendant on trial wasn't the one who committed the crime. Kennedy, but why isn't it a theory of the defense that this crime didn't happen instead of saying that there's an alternate suspect to give the reason that you can conclude it didn't happen? Our theory of the defense is that this is a woman who has a disputatious relationship with a man, and she regularly accuses him falsely of something that didn't occur. That's our theory. That's why she's made up the story. I understand that's the theory that they're raising, and part of that gets Why isn't that a theory of the defense? Well, it is a theory of defense, but it also calls upon collateral evidence to support that theory, and that's just not something that's allowed, not under the Constitution, and due process doesn't reach that far. You mean that if a witness other than the complaining witness can establish the defense that she's a liar and that she makes these up, and witnesses I know all about this, she's told me as it went along, here's my plan. Oh, okay. You're not allowed to call her because she's collateral? My belief is, you're talking about something a little different. The question is bias, all right, that she's lying now that someone paid her to do this or that it didn't happen this crime. No, that she lies for it because that's the way she feels about this relationship. She wants to control them by bringing the police in, that she gets a particular joy out of making false charges. Well, okay. I just don't understand why you can't bring in a third-party witness as a theory of your defense. Well, because we have rules. Every state, this circuit, the federal rules of evidence have rules excluding collateral evidence, and those officers that she wanted to testify, which, by the way, we don't really know what they were going to say because there's never been any affidavits or hearings. Well, that's a different question, whether the officers really would be able to help and how much is a separate question. Well, let's assume, I guess, so that we can address it here today, that they're going to say something similar to what's in their reports. The issue is still that those are things that happened three to five years before this incident. Whether or not those events occurred doesn't have anything to do with whether or not this event occurred. Now, I understand the concept of, well, we want to show that she's a liar, you're lying then, you're lying now, that's fine. And this was an issue that certainly defense counsel at trial could have gotten into on cross-examination. Certainly, I think it would have been permissible to ask her, have you ever filed these false police reports? Haven't you reported him? You know, didn't you report this incident and nothing came of it? That was one of my questions. Does Miller, did it preclude the defense attorney from cross-examining her about these prior alleged false allegations? I don't think we see in the record that it did, and it's not my understanding that it would. Again, that's a State issue, and whether or not it would or wouldn't have shouldn't probably control what we do here today. I think that probably due process would have allowed her to get into those incidents, at least in terms of asking her about it. But then you're stuck with the answer is the problem with that. And I guess so. Well, I can see why a prosecutor wouldn't have problems with saying, okay, to the complaining witness, aren't you a liar, don't you always lie? She says no. Prosecutor wouldn't have a problem with that. But if you could prove that she always lies, that prosecutor would have a problem with it. I think the reason we have these rules is how far are you going to take it? You know, along the same vein, maybe we could get into, well, you filed a false police report three years ago. It'll get good for her. Guess what? Maybe 10 years ago, she borrowed $20 from her sister and never paid her back. A little bit of difference between the same witness accusing the same person of rape twice in a row, and the first couple of times it was a lie, and now she's telling the same story again. That's not like borrowing $20 from your sister. Well, that isn't the way courts have viewed it, I don't think. In Washington, just for example, the Supreme Court talked about excluding It wasn't proper to exclude a witness who had personal knowledge of the charged acts, the case before the court. In Pennsylvania v. Ritchie, the Supreme Court talks about theory of the case is the kind of evidence that will shed light on the accused person's role in the crime before the court, what's happening that he's on trial for. That's just not what's going to happen when you bring in these witnesses from five years ago. That's assuming it's a crime, and the question here is, is there a crime at all? And if somebody knows something about, let's say the police officer said, yes, a year ago, this prosecuting witness said I was raped by this man. The story's identical. And we discovered it was totally false. You would exclude that police officer. Well, okay, in Nevada, there's a procedure if that happened, which isn't likely to happen in this case. Now you're going back to the procedural question. We sort of moved on to the substantive question. I think it was- And you say that you can't call a third-party witness who can prove that the complaining witness has a pattern of lying against the same defendant and making up the same story. That would be precluded. Well, I don't know that there's a hard and fast rule. The Supreme Court, as we discussed in the brief, has passed on these rape shield laws, and they are valid to at least some extent. Now, they leave a fair amount of wiggle room. This isn't a rape shield law. This isn't saying this woman's got a bad character because she likes to go out on dates and have sex. Well, if we're talking about a prior false accusation of sexual assault. You know, and the issue is, to the extent there's some gray area, there isn't any Supreme Court case that says, well, this stuff, as a matter of due process, is always admissible. And I hate to say on habeas, that's kind of what we're left with. But to the extent there was some discretion on the trial court's part, and it exercised it, then that's not an issue that should be the subject of federal habeas relief. I think the answer to part of what you're asking may be found in the Williams v. Borg case, also cited in the briefs. And Mr. Jackson's counsel relies on that case to try to assert the theory that credibility is never a collateral issue. And that's not really what that case says either. I think the case goes on quite clearly to say that a good definition to use for whether or not something is collateral is the question of, could it be put on if the witness had said nothing about the subject? And in this case, the trial judge had already decided, as we discussed before trial, and then again as the trial went on, that these were acts which simply went to the victim's state of mind, that they had nothing to do with the issue before the court. It was just a question of why she didn't want to testify in the first place. Now, one more issue that we should probably talk about with this is, I know there's a lot of talk about these false reports, but that has never really been determined, and the court touched on that during the questioning of counsel. But nothing's ever been established that these were false. And I've reviewed the four reports, and again, just assuming that's what the police officers were going to say. There isn't any indication in there that they ever concluded that she should be charged with a crime for filing a false report, or that the report was false. It's just a question of, well, we can't corroborate this. We're not going to proceed with it. Or in at least two of the four instances that I recall, that she wouldn't cooperate, which sounds pretty similar to the instance case. At the end of the day, the trial court judge probably is the one who summed this up the best. This is on page 432 in the excerpts of record. He told defense counsel that he could cross-examine the victim about these prior incidents, but was not allowed to bring in collateral evidence that she was lying. And that's, again, the law under the law of this circuit. It's the law under the federal rules of evidence, the law in the state of Nevada. So there isn't any real magic to the issue. That's why relief on ground one should be denied. Now, if we get into ground two a little bit, I think this is less strong of an issue than ground one to the extent that there's any merit at all. And there's two main problems with this claim, too. Mr. Jackson wanted to cross-examine the victim about some prior arrests for prostitution that she may or may not have had. I don't know that that's in the record anywhere, actually. And a lot of the same authorities apply. There's this broad right to conduct cross-examination, but there's also this broad right of the court to exclude questions that are irrelevant or harassing. And the trial court and the district court both agreed that these were simply not relevant, that whether or not someone has prior convictions for prostitution sometime in their past, again, not pertaining to this case, has very little to do with one's credibility. And the other problem with this issue, and I will direct the court to page 346 in the excerpts of record, these questions weren't even actually excluded. I don't know if there's anywhere in the record where counsel was prohibited from asking about prior arrests for prostitution. I know that Mr. Jackson's counsel disagrees with that approach, but it's in the record and one can read it for oneself and determine if those questions were asked or not asked. He didn't ask about prior arrests, which he could have asked. He didn't. He asked about were you hooking that night. Well, that's what I'm saying. I think perhaps under State law, at least, he had some leeway to ask about arrests, and he didn't choose to do that for whatever reason. And the trial court acknowledged that fact as well when it addressed this issue. All right. So as it comes to that, Mr. Jackson's counsel couldn't ask about acts of prostitution because they were irrelevant, barred by Nevada law, and he didn't ask about arrests. Therefore, that's why a relief on ground two should be denied. All right. If there aren't any further questions, that concludes my argument. All right. Thank you. Briefly, Your Honors, it appears that what the Attorney General is saying is that Mr. Jackson's theory of defense is not a theory of defense, and clearly it is a theory of defense that he had the right to present and he was not allowed to. And the denial of that right is what the violation, the due process violation is here. It is a matter of federal, properly a matter of federal habeas and is properly before this court. The evidentiary rules, and that's what it gets down to, and he's trying to distinguish the facts between Washington and Chambers and Green and Crane, but all of them state very clearly that evidentiary rules can't preclude due process from happening, and that's what happened here. In terms of whether or not he was able to do what the trial court judge said he could do in terms of cross-examined regarding those facts, defense counsel did try to do that. If you look back and specifically go through the testimony in terms of what happened on her direct, her cross, and her redirect. After her redirect, what happens there is the state says, why are you here? And she says, because he raped me on more than one occasion. Raping him on more than one occasion on recross, what defense counsel did was he got up and he started talking to her and cross-examining her about one of the instances that's included within those four. The time where she says that he raped him on May 7th of 1993, or May 2nd, I'm not sure. He cross-examines that, and he goes into that saying, talking to her about did, or did that not happen, at that point, your honor, in terms of your question regarding what properly is supposed to happen at a Miller hearing, he did that. And so at that point, what's supposed to happen pursuant to Miller at trial is that after cross-examination, he should be able to, again, go forward and present his theory of defense that this police officer investigated the report, here's the police officer, he talked to the witnesses, he talked to her grandmother that was there, he looked at her clothing, he didn't see any injuries, and he didn't proceed with charges. That's important, because all you've got here is all you're left with, and where the evidentiary rule becomes a violation of due process, is you're left with a situation where he's able to cross-examine her, and she says, well, yeah, it happened, yeah, it happened, yeah, it happened. But we know that there's evidence that the police didn't even bother to go forward and press charges on that case, and that's where the due process violation comes into play. I don't see that they didn't prosecute a case. I don't see that that's very strong evidence that the offense didn't happen. There are lots of cases in which the police don't have enough evidence for a prosecution. But I thought the police officer said a lot more than that. And if he did, then that's – it's more questionable than if he just not prosecuted. He said it didn't appear that the events happened the way she said they happened. And I don't remember the exact words, but he expressed considerable doubt that it actually occurred. I don't know that that's enough to get it in. It's not enough for saying I determined that there had been no rape. But it's a lot closer to that than just saying that he didn't proceed with the charges. All right, go ahead. And, Your Honor, I think that that's exactly what needed to be presented to the jury and what the jury needed to be able to hear. The jury needed to be able to hear the other side of the story. And what happened with the trial court is that they didn't allow any of that to take place. It was the same – in terms of the other claim regarding the prostitution arrests, it's the same situation here. It's the same dirty laundry of the victim that they never get to hear. They get to hear one side of the story. What Mr. Jackson wanted was to let the jury hear all of it, present his right of defense. What difference does it make if she was a prostitute? I'm sorry? What difference does it make if she was a prostitute? It made a lot of difference, Your Honor, because under Nevada law, there's a case named Drake that, again, what we're talking about is her veracity. Her veracity is completely at issue here because the issue is consent. Was it consensual or not? And so the fact that – and I think that the state, again, did the right thing in terms of how they – or the defense did the right thing in terms of how they presented it with Drake. He started to ask her and he was immediately shut down. And I disagree with the fact that, you know, it's not appropriate under Drake because he didn't ask about that arrest. He was getting there. He talked to her about that incident. One of the dates that had been identified, October 31st, and said, were you hooking that day? He was immediately shut down. There was a bench conference. At the bench conference, it's pretty – it's presumably logical to say that at the bench conference, what happened was the trial court said, you're not allowed to go into this. The reason that it's important is because, again, it gets down to her veracity. It gets down to consent. It's a he said, she said. And under Nevada law, the Nevada Supreme Court said in Drake that prostitution arrests show a long-standing pattern of criminal dishonesty and sexual crimes and is clearly probative to an allegation of sexual assault, especially when the defense is consent. And I see that I'm way over. Thank you, Your Honors. Thank you. The case is argued will be submitted.
judges: Goodwin, Reinhardt, Murguia